UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT ELLIS,<br><br>                    Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK, LIAM CAWLEY, Individually, MICHAEL ALFIERI, Individually, IAN RULE, Individually, ADAM DONOFRIO, Individually, and JOHN DOE 1 through 3, Individually, (the names John Doe being fictitious, as the true names are presently unknown),<br><br>                    Defendants. | **AMENDED COMPLAINT**<br><br>15-CV-6822 (LTS) (GWG)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ROBERT ELLIS, by his attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.  Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the United States Constitution.

### JURISDICTION

2.  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.  This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

### VENUE

4.  Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6. Plaintiff ROBERT ELLIS is a thirty-five (35) year old African-American male and United States Citizen who resides in the Bronx, New York.

7. Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9. At all times hereinafter mentioned, the individually named defendants LIAM CAWLEY, Shield No. 3001, and JOHN DOE 1 through 3, Shield Nos. unknown, were duly sworn police officers of the NYPD, and were acting under the supervision of the NYPD and according to their official duties.

10. At all times hereinafter mentioned, the individually named defendant MICHAEL ALFIERI, Shield No. 00800, was a duly sworn police officer of the NYPD and a Sergeant, and was acting under the supervision of the NYPD, according to his official duties, and supervising the other individually named defendants.

11. At all times hereinafter mentioned, the individually named defendant ADAM DONOFRIO, Shield No. 4672, was a duly sworn police officer of the NYPD and a Sergeant, and

was acting under the supervision of the NYPD, according to his official duties, and supervising the other individually named defendants.  He is currently an NYPD Lieutenant.

12.  At all times hereinafter mentioned, the individually named defendant IAN RULE was a duly sworn police officer of the NYPD and a Lieutenant, and was acting under the supervision of the NYPD, according to his official duties, and supervising the other individually named defendants.

13.  At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

14.  Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

15.  On November 15, 2014, between 4:00 a.m. and 4:30 a.m., Plaintiff ROBERT ELLIS ("Mr. Ellis") was lawfully present in the vicinity of 52 Grove Street, New York, New York, when Defendants Liam Cawley, Michael Alfieri, Ian Rule, Adam Donofrio, and John Doe 1 through 3, without any lawful justification whatsoever, hit him with an NYPD baton repeatedly, shot him with a Taser gun, and illegally arrested and imprisoned him.

16.  Before, during, and after the defendants beat him up and arrested him, Mr. Ellis committed no crime or offense.  Likewise, at all times relevant to these events, Mr. Ellis was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

17.  At the aforementioned time and place, Mr. Ellis was leaving a nightclub with his

3

girlfriend, Desiree Thomas ("Ms. Thomas"), and a few of their friends.

18. As Mr. Ellis was walking away from the nightclub with Ms. Thomas, Defendant Alfieri, without any provocation or cause, poked Mr. Ellis with his police baton and ordered him to walk away.

19. Mr. Ellis, who was walking away, informed Defendant Alfieri that he was walking away. Despite this fact, Defendant Alfieri poked Mr. Ellis again with a baton and held him there.

20. Defendant Alfieri then instructed two NYPD officers to arrest Ms. Thomas.

21. Mr. Ellis stated that arresting his girlfriend was unnecessary because all they were doing was walking away and trying to get home. At that point, Defendant Alfieri struck Mr. Ellis's left arm with a baton.

22. Thereafter, Defendant Cawley and Defendants John Doe 1 and 2 arrived next to Mr. Ellis and struck him in the ribs and legs with police batons, without any lawful justification whatsoever.

23. Upon information and belief, Defendant Donofrio either actively participated in assaulting Mr. Ellis or stood by and did nothing as this illegal assault transpired, despite having every opportunity to intervene.

24. Mr. Ellis was on his knees at that point and pleaded with the defendants that he was not resisting them. At that moment, Mr. Ellis overheard one of the defendants yell, "Tase him, he's not going down fast enough."

25. Defendant Rule then shot Mr. Ellis with a Taser gun, causing Mr. Ellis to feel an intense sharp pain as the two electrified barbed darts fired from the Taser gun pierced his lower back.

26. In pain, Mr. Ellis involuntarily fell to the concrete floor, as the Taser darts caused him to collapse from "neuromuscular incapacitation."

27. As Mr. Ellis lay on the floor and in pain, Defendant Cawley placed handcuffs on Mr. Ellis's wrists and arrested him, despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever.

28. At no time did Mr. Ellis in any way resist, obstruct, hit, attempt to hit, or grab any of the defendants.

29. At no time did Mr. Ellis refuse any of the defendants' orders.

30. At no time did Mr. Ellis obstruct the path of an NYPD vehicle or strike an NYPD vehicle with a closed fist.

31. The defendants actively participated in beating up Mr. Ellis and/or failed to intervene to prevent each other from illegally assaulting and imprisoning Mr. Ellis.

32. Upon illegally assaulting and falsely arresting Mr. Ellis, the defendants transported him to the NYPD's 6th Precinct, where he remained falsely imprisoned and in pain.

33. Eventually, an ambulance came for Mr. Ellis and transported him, while he remained handcuffed, to the Emergency Room at Lenox Hill HealthPlex, where medical personnel removed the Taser darts from his back and treated him for pain associated with being tased and assaulted.

34. As a result of the defendants assaulting and tasing him, Mr. Ellis suffered bruising and swelling in and around his ribs, back, legs, and arm. Medical personnel administrated Mr. Ellis a Percocet for the pain.

35. Still in police custody while in the Emergency Room, Mr. Ellis was treated, released, and brought back to the 6th Precinct for imprisonment, where he remained unlawfully

imprisoned and in pain, while he awaited arraignment on the false charges filed against him by the defendants.

36. The defendants transported Mr. Ellis from the 6th Precinct to the Manhattan Detention Complex for arraignment on the baseless charges filed under docket number 2014NY087198. These charges were filed based upon the false allegations of Defendants Cawley and Alfieri.

37. Defendants Cawley and Alfieri knowingly manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Ellis at trial.

38. Specifically, Defendant Cawley falsely claimed that Mr. Ellis refused to move away from a crowd and leaned back in preparation to strike Defendant Alfieri in some manner and subsequently resisted arrest.

39. Moreover, to justify the initial seizure, false arrest, and use of excessive force against Mr. Ellis, Defendants Cawley, Alfieri, Rule, and Donofrio conspired together and falsely claimed to NYPD Captain Frank Merenda that Mr. Ellis blocked the path of an NYPD vehicle and then struck this NYPD vehicle with a closed fist, among other claims they manufactured to cover up their illegal conduct.

40. On November 15, 2014, Mr. Ellis was arraigned on the false charges of resisting arrest, menacing, attempted assault, and harassment. Upon arraignment, the presiding Criminal Court judge released Mr. Ellis on his own recognizance.

41. Prior to his release at arraignment, Mr. Ellis spent over sixteen (16) hours falsely imprisoned.

42. The defendants arrested and initiated criminal proceedings against Mr. Ellis

despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

43. The defendants initiated this prosecution for the purpose of covering up their unlawful arrest and unjustified assault upon Mr. Ellis.

44. This false arrest, denial of Mr. Ellis's fair trial rights, and malicious prosecution compelled him to return to the New York County Criminal Court to face these false charges on at least two (2) occasions when, on February 19, 2015, the Criminal Court judge dismissed this malicious prosecution against Mr. Ellis outright.

45. All of the events leading up to and culminating in Mr. Ellis being subjected to excessive force, false arrest, denial of fair trial rights, and malicious prosecution occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

46. All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

47. The underlying application of excessive force, false arrest, denial of the right to fair trial, and malicious prosecution is not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances

confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest. Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with assault and resisting arrest. See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . . The [NYPD] has banned the use of chokeholds since 1993. In 1994, a Bronx man was killed by an officer using the grip. Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board. From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014,

http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping-man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after allegedly stomping on a suspect's head, authorities said. NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie. Solivan's mother and two younger brothers were in the University Avenue apartment at the time. After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-

special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

48.     Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights.  Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the defendants to violate Mr. Ellis's civil rights.

49.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

50.     As a result of the foregoing, Plaintiff ROBERT ELLIS, has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "50" with the same force and effect as if fully set forth herein.

52. All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

53. All of these aforementioned acts deprived Plaintiff ROBERT ELLIS of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

54. The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

55. The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

56. The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

57. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

58. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. The defendants arrested Plaintiff ROBERT ELLIS without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

60. The defendants caused Plaintiff ROBERT ELLIS to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, and deprived of his liberty.

61. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

62. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63. The defendants employed force against Plaintiff ROBERT ELLIS that was excessive, objectively unreasonable, and in a clear violation of Plaintiff's constitutional rights.

64. At no time did Plaintiff ROBERT ELLIS pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

65. As a result of the defendants' conduct, Plaintiff ROBERT ELLIS was subjected to excessive force and sustained physical injuries, including, but not limited to, bruising and

swelling in and around his ribs, back, legs, and arm; substantial pain; discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

66. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

67. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68. The defendants falsified the information against Plaintiff ROBERT ELLIS likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiff.

69. The defendants caused Plaintiff ROBERT ELLIS to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecution was dismissed outright on February 19, 2015.

70. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72. The defendants initiated, commenced, and continued a malicious prosecution against Plaintiff ROBERT ELLIS.

73. The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff.

74. The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecution.

75. The defendants caused Plaintiff ROBERT ELLIS to be prosecuted without any probable cause until all of the charges against him were dismissed outright on February 19, 2015, resulting in a favorable termination for Plaintiff.

76. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Failure to Intervene under 42 U.S.C. § 1983)

77. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "76" with the same force and effect as if fully set forth herein.

78. The defendants had an affirmative duty to intervene on behalf of Plaintiff ROBERT ELLIS, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

79. The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

80. As a result of the defendants' conduct, Plaintiff ROBERT ELLIS was subjected to

excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

81. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

82. All of the foregoing acts of the defendants deprived Plaintiff ROBERT ELLIS of federally protected rights, including, but not limited to, the right:

>     A. To be free from deprivation of civil rights and liberty;
>
>     B. To be free from false arrest/unlawful imprisonment;
>
>     C. To be from excessive force;
>
>     D. To be free from denial of the right to a fair trial;
>
>     E. To be free from malicious prosecution; and
>
>     F. To be free from the failure to intervene.

83. As a result, Plaintiff ROBERT ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff ROBERT ELLIS demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)   full and fair compensatory damages in an amount to be determined by a jury;

(B)   punitive damages against the individual defendants in an amount to be determined by a jury;

(C)   reasonable attorneys' fees and the costs and disbursements of this action; and

(D)   such other and further relief as the Court deems just and proper.

Dated:  New York, New York
    June 1, 2016

                                        Respectfully submitted,

                                        **THE TRAINOR LAW FIRM, P.C.**
                                        26 Broadway, Suite 2100
                                        New York, New York 10004
                                        Tel:  (212) 323-7410
                                        Fax: (212) 323-7411

                                        By:    *Craig Trainor*
                                              CRAIG TRAINOR (CT 1823)

                                        Attorney   for   Plaintiff   ROBERT   ELLIS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT ELLIS,

                    Plaintiff,

      -against-

CITY OF NEW YORK, LIAM CAWLEY, Individually, MICHAEL ALFIERI, Individually, IAN RULE, Individually, ADAM DONOFRIO, Individually, and JOHN DOE 1 through 3, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                    Defendants.

15-CV-6822 (LTS) (GWG)

# **AMENDED COMPLAINT**

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004